IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DAMEISHA MITCHELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16cv540-KKD |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Dameisha Mitchell's ("Mitchell") motion for relief under 28 U.S.C. § 2255, as amended by Mitchell.  Doc. Nos. 1, 10 & 12.[1]  After considering the parties' submissions, the record, and the applicable law, the court finds that the § 2255 motion should be denied without an evidentiary hearing.

## I.   INTRODUCTION

On March 26, 2015, Mitchell pleaded guilty under a plea agreement to one count of conspiring to defraud the United States with respect to claims, in violation of 18 U.S.C. § 286, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  Doc. No. 6-3.  Mitchell's convictions stemmed from her participation in a massive scheme to obtain tax refunds by filing fraudulent tax returns using stolen identities. Her plea agreement contained a provision by which she waived her right to appeal or collaterally attack her

---

[1] References to "Doc. No(s)." are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court.  Unless otherwise noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

conviction and sentence, with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct.  Doc. No. 6-2 at 6–7.  Following a sentencing hearing on August 7, 2015, the district court sentenced Mitchell to 65 months in prison, consisting of 41months on the conspiracy count and 24 months on the identity theft count, the terms to run consecutively.  Doc. No. 6-3.  Mitchell did not appeal.

On June 30, 2106, Mitchell filed this § 2255 motion asserting claims that her trial counsel rendered ineffective assistance by failing to challenge: (1) the method used to calculate the loss amount attributed to her; (2) "the number of tax checks that were actually cashed"; and (3) "the victim's enhancement in light of *Apprendi*." Doc. No. 1 at 4.  Mitchell later amended her § 2255 motion to add a claim that she is entitled to a minor-role reduction based on Amendment 794 to § 3B1.2 of the Sentencing Guidelines.[2]  Doc. Nos. 10 & 12.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255;

---

[2] When amending her § 2255 motion to add her claim seeking a minor-role reduction under Amendment 794, Mitchell "requested to withdraw the issue of ineffective assistance of counsel without prejudice." Doc. No. 12.  Although this court granted that request (*see* Doc. No. 14), the instant Recommendation addresses all of Mitchell's ineffective assistance of counsel claims out of concern about Mitchell's understanding of the consequences of withdrawing these claims.  Mitchell would be subject to the restrictions on successive § 2255 motions if she files a later § 2255 motion asserting her ineffective assistance claims or any other claims.

*United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

B.     **Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

**1.    Method Used to Calculate Loss Amount**

Mitchell claims her trial counsel was ineffective for failing to challenge the method used to calculate the loss amount attributed to her.  Doc. No. 1 at 4.

As part of her plea agreement, Mitchell admitted that she received tax refund checks from several of her coconspirators and took those checks to another coconspirator, Sharonda Johnson, to cash.  Doc. No. 6-2 at 7–8, ¶ 13.b.  Mitchell admitted that she caused

4

Johnson and others to cash at least 195 refund checks totaling $440,176.56 at a Walmart store where Johnson worked. *Id*. at 8, ¶ 13.e; *see also* Doc. No. 6-3 at 15. Records from Walmart and the IRS showed that Johnson cashed 195 refund checks generated from fraudulent tax returns filed in the conspiracy. Doc. No. 6-7 at 15–19, ¶¶ 43, 50 & 52. The district court accepted the U.S. Probation Office's determination that the loss attributable to Mitchell for her criminal conduct was $440,176.56, based on Mitchell's participation in the conspiracy. *Id*. at 20, ¶ 60. Applying § 2B1.1(b)(1) of the Sentencing Guidelines, the court imposed a 14-level enhancement to Mitchell's offense level. *See* U.S.S.G. § 2B1.1(b)(1)(H), (I) (providing for 14-level specific offense characteristic enhancement where the loss is more than $400,000 but less than $1,000,000).

Mitchell's ineffective assistance of counsel claim is entirely conclusory and unsupported by any factual allegations. *See* Doc. No. 1 at 4. For instance, Mitchell does not point to any flaw in the method used to calculate the loss amount attributed to her or suggest a different method that should have been used to calculate the loss amount. Nor does she identify a plausible argument—or any particular evidence—that her counsel might have presented that was reasonably likely to change the loss calculation in her case.

Conclusory or unsupported allegations cannot support an ineffective assistance of counsel claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (finding "unsupported allegations, conclusory in nature and lacking factual substantiation" to be an insufficient basis for relief); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (vague, conclusory allegations in a § 2255 motion are insufficient to state basis for relief); *see also Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008)

(petitioner must allege "reasonably specific, non-conclusory facts with respect to his claim such that there was a reasonable probability sufficient to undermine confidence in the outcome.").

Mitchell's bare assertion that her counsel was ineffective for failing to challenge the method used to calculate the loss amount in her case cannot sustain a claim that her counsel's conduct was deficient, or that she was prejudiced by that conduct.

### 2.    Number of Tax Checks Cashed

Mitchell also claims that her trial counsel was ineffective for failing to challenge "the number of tax checks that were actually cashed." Doc. No. 1 at 4. This claim seems nothing more than a rewording of Mitchell's first claim, regarding the calculation of the loss amount attributed to her. As noted above, Mitchell admitted as part of her plea agreement that she caused her coconspirator Sharonda Johnson to cash at least 195 refund check totaling $440,176.56 at the Walmart where Johnson worked. Doc. No. 6-2 at 8, ¶ 13.e; *see also* Doc. No. 6-3 at 15. And records from Walmart and the IRS showed that Johnson cashed 195 refund checks generated from fraudulent tax returns filed in the tax refund scheme. Doc. No. 6-7 at 15–19, ¶¶ 43, 50 & 52. Mitchell suggests no basis upon which her counsel should have challenged the district court's finding regarding the number of tax refund checks cashed. As with Mitchell's first claim, this claim is conclusory and unsupported by factual allegations. Mitchell's bare assertion of ineffective assistance of counsel does not sustain a claim that her counsel's conduct was deficient or prejudicial.

### 3.    U.S.S.G. § 2B1.1(b)(2) Victim Enhancement and *Apprendi*

Mitchell claims her trial counsel was ineffective "for fail[ing] to challenge [the] victim's enhancement in light of *Apprendi*." Doc. No. 1 at 4.

The district court accepted the Probation Office's determination that Mitchell's criminal conduct involved 195 victims, whose means of identification were used unlawfully. *See* Doc. No. 6-7 at 20, ¶ 61. Applying § 2B1.1(b)(2) of the Sentencing Guidelines, the court imposed a four-level enhancement to Mitchell's offense level. *See* U.S.S.G. § 2B1.1(b)(2)(B) (providing for a four-level specific offense characteristic enhancement if the offense involved 50 or more victims).[3]

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that, other than the fact of a prior conviction, any factual determination that increases the statutory maximum sentence for a crime must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490. In *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court extended *Apprendi* from maximum to minimum sentences. 570 U.S. at 116.

Mitchell's suggestion that the district court's imposition of the "victim enhancement" falls afoul of either *Apprendi* or *Alleyne* is meritless. *Apprendi* and *Alleyne* apply to factual determinations affecting a statutory maximum or statutory minimum sentence. Neither *Apprendi* nor *Alleyne* applies to factual determinations that affect only a defendant's guideline sentencing range. Application of a guideline provision—such as the § 2B1.1(b)(2) victim enhancement—to obtain a sentence within statutory maximums

---

[3] Application Note 4(E) to § 2B1.1(b)(2), defines a "victim" for economic fraud crimes involving identify theft as "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B 1.1 cmt. n.4(E)(ii).

and minimums is an exercise of judicial discretion unaffected by *Apprendi* or *Alleyne*. *See, e.g., United States v. Fields*, 251 F.3d 1041, 1043–44 (D.C. Cir. 2001); *Bell v. United States,* 2017 WL 1398665, at *3 (M.D. Ala.), report and recommendation adopted, 2017 WL 1398649 (M.D. Ala. 2017). The statutory maximum and minimum sentences for Mitchell's offenses were not increased by the district court's application of the § 2B1.1(b)(2) victim enhancement; nore were they increased based on any other judicial fact-finding.[4]

Because *Apprendi* and *Alleyne* are not implicated by the district court's imposition of the § 2B1.1(b)(2) victim enhancement, Mitchell's counsel could not be ineffective for failing to challenge that enhancement "in light of *Apprendi*." Counsel cannot be ineffective for failing to present a meritless claim. *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). Mitchell is entitled to no relief on this claim.

## C.   Amendment 794 to U.S.S.G. § 3B1.2

In an amendment to her § 2255 motion, Mitchell claims she is entitled to a retroactive minor-role reduction based on the November 1, 2015 amendment (Amendment 794) to U.S.S.G. § 3B1.2. Doc. No. 10 at 4; Doc. No. 12.

---

[4] Mitchell was sentenced to a total of 65 months in prison, consisting of 41months on the conspiracy count and 24 months on the identity theft count, the terms to run consecutively. The statutory maximum for the conspiracy count was 10 years, and there was no statutory minimum for that count. *See* 18 U.S.C. § 286. Mitchell's conviction for aggravated identity theft carried a mandatory consecutive sentence of 2 years in prison. *See* 18 U.S.C. § 1028A(a)(1).

(continued…)

Section 3B1.2 of the Sentencing Guidelines provide that a defendant's offense level should be decreased by two levels "[i]f the defendant was a minor participant in any criminal activity."  *See* U.S.S.G. § 3B1.2(b).  Amendment 794 amended the Commentary to § 3B1.2.  The amendment clarified the guideline and introduced a list of non-exhaustive factors that a sentencing court should consider when determining whether to apply a minor-role reduction.[5]

The government argues that Mitchell's claim for relief should be dismissed based on the collateral attack waiver in her plea agreement.  Doc. No. 6 at 10–11.  Alternatively, the government argues that Mitchell's claim fails because her sentence does not represent a complete miscarriage of justice.  *Id.* at 11–12.

The written plea agreement contained a waiver provision with this pertinent language:

<u>DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

---

[5] The listed factors introduced in Amendment 794 are:

 (i)  the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)  the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)  the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmnt. n.3(C).

> Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the Defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. The Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the conviction and sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct.

Doc. No. 6-2 at 6–7, ¶ 12. Under this provision, Mitchell waived her rights to appeal or collaterally attack her conviction and sentence, except on grounds of ineffective assistance of counsel or prosecutorial misconduct.

An appeal waiver or collateral attack waiver is valid if a defendant enters it knowingly and voluntarily. *See Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert,* 997 F.2d 1343, 1350–55 (11th Cir. 1993). In this circuit, such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). To enforce such a waiver, the government must demonstrate either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert,* 997 F.2d at 1351.

Here, the magistrate judge who conducted the plea hearing specifically questioned Mitchell about the waiver provision and confirmed that she understood its terms. Doc. No. 6-3 at 9–10. Thus, the record reflects—and Mitchell does not disprove—that Mitchell's collateral-attack waiver was knowing and voluntary. *Bushert,* 997 F.2d at 1351. Consequently, the undersigned agrees with the government that Mitchell's claim seeking

a minor role reduction under Amendment 794 is barred from collateral review by the waiver provision in her plea agreement.

Even if Mitchell's claim is not barred by the waiver provision in her plea agreement, it does not entitle her to relief.  In *United States v. Cruickshank*, 837 F.3d 1182 (11th Cir. 2016), the Eleventh Circuit confirmed that Amendment 794 was a clarifying amendment, meaning that it only clarified the factors a court should consider for a minor-role adjustment and did not substantively change § 3B1.2.  837 F.3d at 1194; *see also* U.S.S.G. Supp. App. C., Amend. 794 ("This amendment provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies.").  In *Burke v. United States*, 152 F.3d 1329 (11th Cir. 1998), the Eleventh Circuit held that a defendant's claim that his sentence is contrary to a subsequently enacted clarifying amendment is a nonconstitutional issue that is not cognizable under § 2255 absent a complete miscarriage of justice.  This is so because "§ 2255 is not a substitute for direct appeal."  *Id*. at 1331 (citation omitted).   Non-constitutional claims, such as clarifying amendments to the Sentencing Guidelines, "can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Id*. (quoting *Reed v. Farley*, 512 U.S. 339, 348 (1994)).

Mitchell had sufficient opportunity to challenge the absence of a minor role reduction at her original sentencing, and on direct appeal.  She argued for a minor role reduction at her sentencing hearing.  Doc. No. 6-4 at 2–10.  Her argument, however, was rejected by the district court.  *Id*. at 10.  She did not appeal her sentence.  A prisoner may

11

only challenge a sentencing error as a "fundamental defect" on collateral review when she establishes that she is actually innocent of her crime or that a prior conviction used to enhance her sentence has been vacated.  *See Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014).  Mitchell argues neither of those things.  Considering the circumstances, any alleged misapplication of the sentencing guidelines in this case cannot be considered "fundamentally unfair" or "a miscarriage of justice" sufficient to support collateral relief under § 2255.  *See Burke*, 152 F.3d at 1332.

Further, review of the record demonstrates that Mitchell does not qualify for a minor-role reduction under § 3B1.2, even as amended by Amendment 794.  For purposes of § 3B1.2, a minor participant in the criminal activity is one who is less culpable than most other participants, but whose role could not be described as minimal.  U.S.S.G. § 3B1.2, cmnt. n.5.  In *United States v. Cruickshank*, 721 F. App'x 909 (11th Cir. 2018), the Eleventh Circuit stated:

> In *[United States v.] De Varon*, [175 F.3d 930 (11th Cir. 1999),] we established a two-part test to determine whether a defendant qualifies for a minor-role adjustment.  *See id.* at 940.  First, "the district court must measure the defendant's role against the relevant conduct for which [he] has been held accountable."  *Id*. at 945.  "When the relevant conduct attributed to a defendant [at sentencing] is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable."  *United States v. Alvarez-Coria,* 447 F.3d 1340, 1343 (11th Cir. 2006).  Second, "the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in [the] relevant conduct."  *De Varon*, 175 F.3d at 945.

> To conduct this inquiry, we've held that "the conduct of participants in any larger criminal conspiracy is irrelevant."  *De Varon*, 175 F.3d at 944.  Rather, the district court should (1) look to "other participants only to the extent that they are identifiable or discernable from the evidence," and (2)

12

"consider only those participants who were involved in the relevant conduct attributed to the defendant." *Id.* We've advised that "[a] defendant is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320–21 (11th Cir. 2010) (emphasis omitted). Additionally, we have warned that "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none [of the participants] are minor or minimal participants." *De Varon*, 175 F.3d at 944. Amendment 794 to the Sentencing Guidelines embraced the approach we took in *De Varon*, and incorporated many of the same factors delineated in *De Varon*. *Cruickshank,* 837 F.3d at 1193–94 ("*Cruickshank* I").

721 F. App'x at 911–12.

As noted above, Mitchell was responsible for the cashing of 195 fraudulent tax refund checks that resulted in a loss amount of $440,176.45. She caused her coconspirator Sharonda Johnson to cash those checks at the Walmart where she worked. *See* Doc. No. 6-2 at 8, ¶ 13.e; Doc. No. 6-3 at 15. At Mitchell's sentencing hearing, the government presented evidence that she recruited and organized numerous people to take the refund checks to Johnson to be cashed, and that she gave some of the checks directly to Johnson. Doc. No. 6-4 at 5 & 8–9. Testimony also indicated that it was Mitchell who recruited Johnson to cash the checks as part of the scheme. *Id.* at 7–8. Although Mitchell may have been less culpable than the leaders of what was a massive conspiracy, she was not substantially less culpable than other codefendants who participated in cashing fraudulent tax refund checks. She played a leading role in planning, organizing, and executing that aspect of the conspiracy. Further, in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999), the Eleventh Circuit held that a minor role reduction "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct

attributed to her." 175 F.3d at 940.  The record reflects that Mitchell was held accountable only for her personal and direct involvement in the conspiracy, i.e., her leading role in the cashing of fraudulent tax refund checks.

Mitchell has failed to prove that (1) she was less culpable than most other participants in her relevant conduct, or (2) her actual conduct was any different from the relevant conduct for which she was held accountable at sentencing.  *See De Varon*, 175 F.3d at 939, 945; *Cruickshank*, 721 F. App'x at 911–12.  She is not entitled to the benefit of a retroactive minor-role reduction under Amendment 794.

### III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Mitchell be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before July 30, 2018.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, on this the 16th day of July, 2018.

/s/ Susan Russ Walker_____
Susan Russ Walker
United States Magistrate Judge